# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-0262
Filed May 27, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**L.A. Jefferson Jr.,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Joel Dalrymple (motions to suppress and to rescind plea)
and The Honorable Andrea J. Dryer (motion to withdraw plea), Judges.

———————————

**AFFIRMED**

———————————

Webb L. Wassmer of Wassmer Law Office, PLC, Marion, attorney for
appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

L.A. Jefferson appeals from his criminal convictions for one count of homicide by vehicle, reckless driving, in violation of Iowa Code section 707.6A(2)(a) (2019), a class "C" felony; one count of leaving the scene of a serious injury accident in violation of Iowa Code section 321.261(1) and (3), an aggravated misdemeanor; and one count of operating while intoxicated, second offense, in violation of Iowa Code section 321J.2(2)(b), an aggravated misdemeanor. He asserts two issues. First, Jefferson maintains that his constitutional rights were violated when officers failed to give him the *Miranda*[1] advisory before questioning him outside a bar, and the district court erred by not sustaining his motion to suppress his incriminating statements. Second, he contends he did not voluntarily plead guilty and thus he should have been allowed to withdraw his *Alford*[2] plea.

The State argues the district court properly denied Jefferson's motion to suppress as Jefferson was not in custody when he made his admissions and the district court did not abuse its discretion in denying Jefferson's motion to withdraw his plea agreement.

We affirm Jefferson's convictions and sentence as he failed to prove a viable claim under either issue raised. We find Jefferson was not in custody when he was questioned outside the bar, thus *Miranda* was not implicated. Further, Jefferson's plea was given voluntarily and was not coerced so the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (providing required warnings to be given to individuals subject to custodial interrogation).

[2] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (allowing criminal defendant to enter guilty plea without admitting guilt).

district court properly denied his motion to withdraw his plea. We therefore affirm.

## I. Background Facts and Proceedings.

On July 23, 2019, around 3:51 p.m., a cyclist was struck and killed by a vehicle in Waterloo. The driver of the vehicle fled the scene. During the investigation into the accident, police learned Jefferson was a suspect and heard he was at a local bar. Around 5:30 p.m., plain-clothes detectives went to the bar to find Jefferson and one of them recorded the following discussion.

One of the plain-clothes detectives took Jefferson to a quiet area outside of the bar and asked, "Why do you think we're here to chat with you?" Jefferson responded, "I hit the dude and bike . . . I mean it wasn't my fault." Another plain-clothes detective then suggested they should go down to the police station and "talk about it."

All in all, the discussion outside the bar took only a few minutes and was recorded. In addition to the short conversation about the reason they were there, there was a short discussion with another bar patron, who turned out to be Jefferson's father, who was asked to step away from the area. But a short while later, Jefferson asked the detectives to get his father, which they did, and the two of them talked with the detectives present. Then there was discussion about paying the bar tab. But the detectives finally said that they "[would] square it up later" and directed Jefferson toward the parking lot to leave for the police station. The police video recording ended at that point. Once at the police station, an officer formally read Jefferson his *Miranda* rights.

Jefferson moved to suppress the statements he made at the bar. After a hearing on Jefferson's motion to suppress, the district court denied the motion.

The history of the case proceedings was summarized by the district court:

The offense is alleged to have occurred on or about July 23, 2019. From that, Black Hawk County case AGCR231595 was filed. On or about July 24, 2019, [Jefferson] was arrested and bond was set in the amount of $100,000 cash or corporate surety. The information was filed and [Jefferson] was indicted on August 1, 2019. Trial was set on October 9, 2019. Trial was continued to October 15, 2019 *at the request of* [*Jefferson*]. Trial was again continued to December 10, 2019 *at the request of* [*Jefferson*]. Trial was again continued to January 7, 2020 *at the request of* [*Jefferson*]. Trial was again continued to January 21, 2020 *at the request of* [*Jefferson*]. Trial was again continued to February 25, 2020 *at the request of* [*Jefferson*].

On or about January 13, 2020, the above matter morphed into Black Hawk County case FECR234062. At such time [Jefferson] was charged with homicide by vehicle—operating under the influence, the class B felony, in violation of Iowa Code § 707.6A(1), and leaving the scene of a fatality accident, the class D felony, in violation of Iowa Code § 321.261 and 321.261(4). [Jefferson] was formally charged by way of trial information on January 23, 2020. The initial trial was set on March 10, 2020. Trial was continued to April 21, 2020 *at the request of* [*Jefferson*]. On April 3, 2020 [Jefferson's] bond was posted and [Jefferson] was released from custody. [Jefferson] remained out of custody until July 21, 2020 (upon the allegation he violated the terms of pretrial release and failed to appear for the pretrial conference of July 10, 2020). The July 14, 2020 trial was cancelled as [Jefferson] remained at large and was subsequently reset for November 17, 2020, after the arrest of [Jefferson].

On August 12, 2020, [Jefferson] was again released from custody upon posting bond. The case was removed from the trial docket on December 21, 2021. Per the pleading of the defense, "On December 17, 2021, [Jefferson] notified the Court that he intended to enter a plea of

guilty to a lesser included offense to Count 1." On February 11, 2022, at the date and time scheduled for [the] plea, the Court was advised, "[Jefferson] no longer wishes to plead guilty and requests to have a trial." On October 3, 2022, another arrest warrant was issued for failing to appear for pretrial conference on October 3, 2022. The warrant was later recalled and the trial was reset to December 6, 2022. The Court attributed the continuance to the "motion of the State ([Jefferson] failed to appear for pretrial conference.)"

Trial was continued repeatedly while [Jefferson] was out of custody from the posting of bond on August 12, 2020 until [Jefferson] again violated the terms of pretrial release per the report of November 18, 2022. [Jefferson] was arrested on November 18, 2022. All continuances were attributed solely to [Jefferson] or as a joint request of the parties. At the time of [Jefferson's] arrest, trial was set for December 6, 2022. The trial was continued to January 17, 2023 upon written motion of the defense. On the morning of trial, trial was again continued to March 7, 2023, upon the written motion of [Jefferson's new counsel]. Trial was again continued to May 2, 2023 *at the request of* [*Jefferson*]. Again, [Jefferson] requested a continuance and trial was reset to June 27, 2023. Following a hearing of June 12, 2023, [Jefferson] again sought a continuance of trial to August 8, 2023.

(emphasis in original).

From here, trial was set for August 15. But on August 3, Jefferson moved to recuse his trial counsel, and after the trial court conducted a *Faretta* colloquy,[3] Jefferson requested the court continue the trial. The district court clarified that if Jefferson proceeded pro se "it will not guarantee any kind of continuance and it's not gonna be contingent upon a continuance. So if you want to represent yourself, you need to understand it will be on the 15th." At this point, Jefferson said he would accept whatever plea deal was on the table

---

[3] *Faretta v. California*, 422 U.S. 806, 835 (1975) (requiring courts to ensure that a criminal defendant seeking to represent themself has "knowingly and intelligently" relinquished the right to assistance of counsel).

and the district court said it would not accept a guilty plea as Jefferson was "telling me you're not doing it voluntarily, that you're only doing it because you don't want to go forward with a trial."

When the parties met with the court again on August 13 to cover other matters, Jefferson again discussed a plea offer. The district court cautioned, "[I]f the State presents [a plea offer] to you or if you've had time to mull it over and you represent to the Court that you do understand it and that you're willing to accept it, then we'll cross that bridge." On the morning of trial, after allowing Jefferson an opportunity to confer with appointed standby counsel, Jefferson alerted the court he wanted to enter an *Alford* plea.

The district court proceeded with a colloquy, where Jefferson confirmed it was his "voluntary decision" to plead guilty and it was in his best interests to enter an *Alford* plea as he had more to gain by pleading guilty than by going to trial. During this time, he was afforded a full and fair opportunity to meet with his standby attorney to discuss his case and any potential defenses. At the end of the colloquy the district court said:

> In a minute I'm going to ask how do you plead to these three crimes. And if you recall earlier, I told you if you wanted to change your mind at any point in time through this plea proceeding, you could up until a point. When I ask you how do you plead, you'll cross that line in the sand where you can't just simply change your mind and proceed with a trial. Do you understand?

Jefferson stated he understood. The district court accepted Jefferson's conditional plea of guilty[4] as described by the State and Jefferson.

---

[4] *See* Iowa R. Crim. P. 2.8(2)(b)(9) ("With the consent of the court and the prosecuting attorney, a defendant may enter a conditional plea of guilty, reserving in

Less than twenty-four hours after the court accepted the plea agreement, Jefferson moved to "rescind" his plea under Iowa Rule of Criminal Procedure 2.8(5), arguing at the hearing on the motion:

> I just felt instead of going through with a trial blindfolded, I was forced to accept the plea that was offered after knowingly, for the last four years as this case has been open, that I rejected consistently any plea offerings because I stand on my actual innocence. And so when it came to my innocence or being able to know when to actually try and figure out what the best option would be, it felt like I was at a dead end and that was just the only option. I would not fare any type of way well with going to a trial with two prosecutors that are, you know, well-schooled in this law, and me being a layperson just trying to defend my innocence and my right to a fair trial.

The court denied this motion, which it interpreted as a motion in arrest of judgment. Before sentencing, Jefferson obtained new counsel who moved to withdraw the plea. In the ruling on the motion to withdraw Jefferson's guilty plea, the court said:

> [Jefferson] did not enter the *Alford* pleas under duress. [Jefferson] was not forced to accept the plea agreement. [Jefferson] knew that the jury trial was not going to be continued and had been warned that his election to represent himself was not going to establish cause for a continuance. [Jefferson] made a knowing, voluntary, and intelligent choice between the options that he knew were available to him.

The district court denied the motion to withdraw the plea and Jefferson filed this appeal.

---

writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.").

## II. Standard of Review.

A challenge to the denial of a motion to suppress on federal or state constitutional grounds is reviewed de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We give deference to the district court's factual findings, although we are not bound by them. *See State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

Review of the denial of a motion to withdraw a guilty plea is for abuse of discretion. *See State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008). "An abuse of discretion will only be found where the trial court's discretion was exercised on clearly untenable or unreasonable grounds." *Id.*

## III. Analysis.

**A. Motion to Suppress**. Jefferson's main claim on this issue is that when he was interrogated at the bar, he was not free to leave, which was confirmed by the testimony of one of the interrogating officers. Thus, he was in custody and the officer had to provide *Miranda* warnings. According to Jefferson, the district court erred when it denied the motion to suppress his admissions.

The two law enforcement officers who spoke with Jefferson at the bar testified at the suppression hearing. Detective Vaska Zubak testified that Jefferson was "not in custody" when they spoke with him at the bar and the conversation was "casual." She did admit that "at that point in time if he would have said that he wanted to leave [she] would have asked him to come to the police station"—and when pressed said, "He was not free to go." Beyond that, however, none of the officers used any weapons, intimidation techniques, threats, or coercion during the conversation.

Detective Ryan Muhlenbruch testified about his recording of his interview and Jefferson's admissions. Detective Muhlenbruch stated that Jefferson appeared willing to talk to them. He testified they first approached Jefferson in an information gathering interaction to try to find out who was driving the car involved in the incident as it was not Jefferson's car but a document with Jefferson's name on it was found in the car.

The district court concluded:

> Upon review of the evidence in its entirety, the Court finds *Miranda* warnings were not required at the time officers approached [Jefferson]. More importantly, at the time Muhlenbruch asked the relevant question as to why Jefferson believed officers were there Jefferson was not in custody and the *Miranda* warning was not required. The Court considers the relevant factors as to whether Jefferson was in custody including the language used to summon the individual, the purpose, place, and manner of question, the extent to which Jefferson was confronted with evidence of his guilt, and whether Jefferson was free to leave the place of questioning. All four factors weigh in favor of noncustodial interrogation. After the admission it is likely true [Jefferson] was no longer free to just simply leave (as exhibited by the remainder of the limited video). No further significant questioning was conducted until at the police department where [Jefferson] was properly Mirandized and [Jefferson] did waive *Miranda*.

"Law enforcement officers are required to give *Miranda* warnings to individuals who are both in custody and subject to interrogation." *State v. Park*, 985 N.W.2d 154, 168 (Iowa 2023). In applying an objective test,

> [w]e assess the totality of the circumstances using four guiding factors in our determination: (1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of h[is] guilt; and (4) whether the defendant is free to leave the place of questioning.

*Id.* (cleaned up). But "custody" as used here means "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (cleaned up).

We apply context to what Detective Zubak said about Jefferson being free to leave during the conversation. First, the officers had enough information to legitimately question Jefferson about the accident. At the very beginning of the exchange, we find the officers were conducting a preliminary investigation. *See United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003) ("One is not free to leave a *Terry* stop until the completion of a reasonably brief investigation, which may include limited questioning."). And from our review of the recording, Jefferson's freedom of movement was not "curtailed to a degree associated with a formal arrest" as he was only asked to move to the quieter outdoor area of the establishment. *See State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015) (cleaned up). When Detective Muhlenbruch first approached Jefferson and asked if Jefferson knew why they wanted to chat with him, Jefferson immediately admitted hitting the cyclist. In the context of this interaction, the question was casual and would not constitute an interrogation. No accusations of guilt were directed at Jefferson and, at that point, only two plain-clothes detectives and Jefferson were involved in the conversation outside of a bar near a parking lot. *See id.* at 173 (noting the plain-clothes officers' "demeanor, tone, and line of questioning" would not have led a reasonable person to have understood that he was in custody). Objectively, Jefferson, as a reasonable person, would not have believed he was in custody when he volunteered that he had hit the cyclist.

On our de novo review and applying the objective test, we find that Jefferson was not in custody at any time prior to when he admitted he hit the

10

cyclist, and the district court properly denied the motion to suppress. *See State v. Palmer*, 791 N.W.2d 840, 844 (Iowa 2010) ("We give deference to the district court's fact findings . . . , but we are not bound by those findings." (citation omitted)).

**B. Motion to Withdraw Plea Agreement.** "At any time before judgment and upon a showing of good cause and that it is in the interests of justice, the court may permit a guilty plea to be withdrawn and a not guilty plea substituted." Iowa R. Crim. P. 2.8(5). Jefferson maintains that he did not voluntarily enter his guilty plea and the district court erred by not allowing him to withdraw it. The State asserts that Jefferson has not developed this argument in his appellate brief and so the issue should be deemed waived under Iowa Rule of Appellate Procedure 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). We prefer to address the merits.

As trial approached, after several defense-requested continuances, Jefferson asked to represent himself, which was granted. Then, on the morning of trial, Jefferson again moved to continue the trial. The district court denied the motion. In his appellate brief, Jefferson argues that he was "completely unprepared to proceed to trial" and that the denial of his motion to continue "placed . . . Jefferson in an impossible situation." He contends "[h]e was faced with the dilemma of entering a[] plea to charges that he did not believe he was guilty of or proceeding to trial grossly unprepared." Jefferson maintains that the court should have either denied his request to represent himself or continued the trial. Instead, Jefferson entered an *Alford* plea, which he argues "was compelled by the circumstances." Once he pleaded guilty, within twenty-four hours, Jefferson moved to rescind the guilty plea.

11

Prior to pleading guilty, Jefferson and the district court had this exchange just before jury selection:

> JEFFERSON: Yes. I was trying to express that I was willing to accept the *Alford* plea.
>
> THE COURT: All right. So I just want to make sure the record's clear. Because we were in the midst of talking and taking the plea and you told me that you didn't want to and you wanted a continuance because you wanted to further deal with a defense to the State's motion in limine that had not even been granted, and obviously preparing a defense to me tells me that it's not your intent to plead guilty but to go forward with the trial and defend against the trial.
>
> So perhaps that's my confusion. But to be clear, you want to go forward with the plea that we had just begun and accept the offer and the terms of the State?
>
> JEFFERSON: I do. I at that time, Your Honor, just had questions about that motion.

Even now, Jefferson does not argue that he did not understand the plea. Instead, he argues he felt coerced into entering the plea. *See State v. Speed*, 573 N.W.2d 594, 597–98 (Iowa 1998) (finding the defendant "lacked credibility" and upholding plea where defendant did not dispute that the district court followed the colloquy guidelines at the plea entry, but instead claimed that contrary to his statements at the hearing, his trial counsel pressured him into pleading guilty); *see also State v. Lindsey*, 171 N.W.2d 859, 865 (Iowa 1969) ("The fact that an accused may elect to plead guilty to a lesser offense when he is also charged with a more serious offense does not make his plea coerced."). Typically, defendants face either a trial or acceptance of a plea agreement—just like Jefferson.

After reviewing the district court's detailed and thorough colloquy with Jefferson, we find the district court exercised appropriate discretion in

denying the motions to rescind his plea and to withdraw the plea. Plus, the district court stopped Jefferson from accepting a plea agreement in earlier hearings, pointing out that it would only accept a plea if Jefferson understood it and agreed with the terms. "In situations in which a trial court has refused to allow withdrawal of a guilty plea, such refusal will be upheld where a defendant, with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty, enters such a plea without fear or persuasion." *State v. Culbert*, No. 13-1222, 2014 WL 3747848, at *2 (Iowa Ct. App. July 30, 2014) (cleaned up). Such is the case here.

## IV. Conclusion.

The district court properly denied the motion to suppress evidence as Jefferson was not in custody when he made his admission. Further, Jefferson failed to show he was coerced into accepting his plea agreement and, instead, the record supports that he understood the terms of the plea agreement and voluntarily accepted them.

**AFFIRMED.**